**Sharon L. BRYANT, Plaintiff,**

v.

**Robert L. THOMAS, d/b/a Thomas Auto, and Rich Lewis, Defendants.**

Civ. No. 77–0–257.

United States District Court, D. Nebraska.

Dec. 5, 1978.

Jon Okun, Omaha, Neb., for plaintiff.

Eugene L. Pieper, Omaha, Neb., for defendants.

## MEMORANDUM

DENNEY, District Judge.

Sharon L. Bryant has filed this suit to obtain redress for alleged violations of the

Motor Vehicle Information and Cost Savings Act. Statutory damages, costs, and attorney's fees are sought under 15 U.S.C.A. § 1981 *et seq.* (1974). Bryant specifically alleges violations of §§ 1984, 1985, 1986 and 1988(b).

A nonjury trial on the merits has been held, and final written arguments have been submitted to the Court. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the Court makes the following findings of fact and conclusions of law.

In June of 1977, Steven Lambson read a newspaper advertisement regarding the sale of a 1973 Kawasaki motorcycle with a vehicle identification number (VIN) of F1105770. Lambson, the son of the plaintiff, made arrangements to look at the bike at the home of Robert L. Thomas, a used car dealer. While inspecting the vehicle in the presence of Mrs. Thomas, Lambson noted that the odometer read approximately 3300 miles. Impressed by the low mileage and the price of $295.00, Lambson talked to his mother about arrangements for the purchase of the Kawasaki. Lambson promised to pay for the motorcycle and Bryant agreed to obtain title in her name because of her son's age.

Robert Thomas, who was not present when Lambson initially inspected the Kawasaki, drove the motorcycle to the Bryant home where he relinquished possession to Lambson subsequent to payment. Bryant attempted to transfer title after the purchase, but the county declined to issue a new certificate in the absence of a statement of odometer mileage by Thomas Auto, the transferor. She drove her car to the Thomas Auto lot, where Richard Lewis, the manager of Thomas' business, executed the required certificate of mileage on the basis of odometer information provided to him by the plaintiff. Since the motorcycle was not present, Lewis could not independently verify Bryant's figures.

After receiving the odometer certificate, Bryant returned to the county's offices. Although title to the Kawasaki was issued in the name of the plaintiff, a discrepancy in the records of the county suggested that the motorcycle's odometer had been turned back. Lewis' certification, dated June 8, 1977, showed a reading of 3350 miles. Both the certificate of title of Thomas Auto and the odometer certification obtained from Thomas Auto's predecessor in title reflected a mileage of 14,863 only two months prior to the plaintiff's purchase. This discrepancy, as well as subsequent mechanical problems with the Kawasaki, prompted Bryant to retain counsel and initiate the present litigation.

Robert Thomas, the sole proprietor of Thomas Auto, originally purchased a 1973 Kawasaki, VIN F1105770, from Associates Finance, a business located in Springfield, Missouri. This particular motorcycle had been repossessed by Associates, and was transferred to the Thomas Auto lot in Omaha subsequent to payment of the $375.00 purchase price by Thomas. Thomas testified that he never attempted to discern the mileage on the motorcycle before buying it in December of 1976. Although the vehicle was in Robert Thomas' possession from the date of purchase until June of 1977, a Nebraska certificate of title was not obtained in the name of Thomas Auto until April 6, 1977. This delay was apparently attributable to problems in the procurement of a certification of the odometer reading from the Missouri seller. Under Nebraska law, title cannot be obtained in the absence of a statement by the transferor setting forth the mileage of a motor vehicle. Neb.Rev. Stat. § 60–2304 (Reissue 1974).

To effectuate the transfer, Thomas sent Charles Mangiarelli, a driver and title runner, to the county court house. Mangiarelli telephoned Rich Lewis at the Thomas Auto lot to ascertain the odometer mileage. Lewis copied the figure of 14,863 miles from the motorcycle and relayed the information to Mangiarelli, who filled in the required form, signed it for Lewis and obtained a Nebraska certificate of title.

The Kawasaki remained at the Thomas Auto lot until late May of 1977. To avoid excessive use of the machine by prospective purchasers, the motorcycle was taken to the Thomas residence for sale through the

home. Shortly thereafter, the plaintiff purchased the vehicle.

■ The Motor Vehicle Information and Cost Savings Act was passed by Congress "to prohibit tampering with odometers on motor vehicles and to establish certain safeguards for the protection of purchasers with respect to the sale of motor vehicles having altered or reset odometers." 15 U.S.C.A. § 1981 (1974). Motorcycles fall within the protective ambit of this statute. *Grambo v. Loomis Cycle Sales, Inc.*, 404 F.Supp. 1073 (N.D.Ind.1975). This Court must now determine whether the specific provisions of this law have been violated by the defendants.

In her complaint, Bryant alleges a violation of 15 U.S.C.A. § 1985 (Supp.1978). That section proscribes the fraudulent operation of a motor vehicle with knowledge that the odometer is disconnected or nonfunctional. No evidence of a violation of this section was adduced at trial. The Court declines to hold the defendants liable for fraudulent operation under § 1985.

■ Close questions of fact present themselves when §§ 1984 and 1988 are examined in light of the record in this case. Section 1984 prohibits the alteration of a motor vehicle's odometer "with the intent to change the number of miles indicated thereon." 15 U.S.C.A. § 1984 (Supp.1978). Section 1988 directs the Secretary of Transportation to promulgate rules requiring a title transferor to disclose the cumulative mileage registered on a vehicle's odometer on a prescribed form. If the true mileage is different from the odometer reading, the transferor is required to disclose that the actual mileage is unknown. A violation of these rules, or a knowing disclosure of false information to the transferee of the vehicle, are considered violations of § 1988(b). To recover for a violation of a section of the Act, a civil litigant has the further burden of establishing an "intent to defraud" on the part of the transferor. 15 U.S.C.A. § 1989 (1974). *Accord, Clayton v. McCary,* 426 F.Supp. 248 (N.D.Ohio 1976); *Pepp v. Superior Pontiac,* 412 F.Supp. 1053 (E.D.La. 1976); *Hensley v. Lubbock National Bank,*

561 S.W.2d 885 (Tex.Civ.App.1978). *See generally Annot.,* 28 A.L.R.Fed. 584 (1976).

The meaning of the phrase "intent to defraud" has not been uniformly interpreted by the courts that have considered the question. Illustrative is the case of *Mataya v. Behm Motors, Inc.,* 409 F.Supp. 65, 69 (E.D.Wis.1976), where the court held that the plaintiff must prove actual knowledge to establish fraudulent intent. A more prevalent definition of this concept appears in the case of *Jones v. Fenton Ford, Inc.,* 427 F.Supp. 1328 (D.Conn.1977):

A widely accepted rule of fraudulent intent, applicable here, is that civil liability may be imposed where it is proved that a defendant's statements were made recklessly or carelessly, without knowledge of their truth or falsity, or without reasonable grounds for belief in their truth, especially in a case where (1) the defendant was under a duty to have the knowledge in question, (2) a relation of trust or expert reliance existed, (3) a statement was made to induce a business arrangement, or (4) the knowledge or information in question was within the special province of the defendant. Such conditions being met, it does not matter whether or not the declarant actually believed the statement (or statements) in question to be true. (citations omitted).

*Jones v. Fenton Ford, Inc., supra,* 427 F.Supp. at 1334. *Accord, Pepp v. Superior Pontiac, supra,* 412 F.Supp. at 1055.

■ Under this odometer statute, fraudulent intent cannot be presumed, but it may be inferred from certain facts. *Clayton v. McCary, supra,* 426 F.Supp. at 258; *Pepp v. Superior Pontiac, supra,* 412 F.Supp. at 1055. The plaintiff's burden of proof in this regard is set forth in the case of *Delay v. Hearn Ford,* 373 F.Supp. 791, 796 (D.S.C.1974):

All that is required of a purchaser before recovery will be allowed is that a change in the odometer reading has occurred and that the seller has failed to disclose the change. An intent to defraud arises from the proof of the foregoing in the absence

of an explanation of the odometer change.

Subsequent courts in other jurisdictions have adopted this standard. *See, e. g., Shore v. J. C. Phillips Motor Co.*, 567 F.2d 1364 (5th Cir. 1978); *Klein v. Pincus*, 397 F.Supp. 847 (E.D.N.Y.1975). The *Delay* court's interpretation of the burden of proof has also been adopted in this district. *Duval v. Midwest Auto City, Inc.*, 425 F.Supp. 1381, 1386 (D.Neb.1977), *aff'd* 578 F.2d 721 (8th Cir. 1978). The Court concludes that the liability of the defendants should be determined in light of the standards set forth in *Delay* and *Fenton Ford*.

A review of the evidence presented at trial demonstrates the closeness of the factual questions. Although persuasive arguments have been made by the defendants, the Court concludes that the plaintiff has established the requisite fraudulent intent.

■ This conclusion cannot be drawn without difficulty. Bryant presented no evidence that the mileage on the Kawasaki was incorrect other than the odometer certificates themselves. No attempt was made to show any marks of tools that might have been used to tamper with the odometer. No changes were made in the appearance of the Kawasaki. No misrepresentations were made to Bryant or Lambson as to the motorcycle's mileage outside of the certificates of mileage. No proof of previous transgressions by the defendants was brought forward. Evidence demonstrating a circuitous transfer of title to avoid state odometer strictures was not presented.

Despite these failings, Bryant has demonstrated that an inference of an intent to defraud is proper. It is clear that the odometer reading of 14,863 miles was taken while the bike was in Thomas' possession. The possibility of a clerical error is slight, as the difference in the two readings is not a minor one. No transposition of two numbers or omission of a single numeral is present here. Moreover, both Thomas and Lewis testified that only two motorcycles had been sold by Thomas Auto during the preceding year, as opposed to five hundred automobiles. The very small number of

motorcycles that were present on the used car lot at the time that the first odometer certification occurred militates against the possibility that the mileage was obtained from the wrong bike.

■ The implication of fraud is proper despite the fact that Thomas Auto lost money when the Kawasaki was sold to Bryant. Robert Thomas' statement that he purchased the motorcycle from Associates Finance for $375.00, although unsubstantiated by any receipts, is uncontroverted. Neither side disputes the fact that Lambson paid $295.00 for the vehicle. Although the sale of the Kawasaki for an $80.00 loss undermines the presumption of fraud from a motivational standpoint, it is not fatal to the plaintiff's position. Financial gain is not a requirement of fraud, although they often exist in tandem. The Secretary of Transportation did not deem monetary gain as crucial to a finding of a violation of odometer disclosure requirements when he included a transfer by gift as one of the regulated transactions. 49 C.F.R. § 580.3 (1977). Moreover, Lambson's subsequent mechanical difficulties with his motorcycle suggest that Thomas may have been aware of the vehicle's true condition before the newspaper advertisement was placed, and adjusted the sale price accordingly to insure a quick sale. Whatever the reason for the lower sale price, the fact remains that the odometer reading changed while the motorcycle was in the possession of the defendants. Given the lack of a convincing explanation, the *Delay* test is satisfied. The Court finds that Thomas violated § 1984, and that he intended to defraud the plaintiff with regard to the transfer.

■ No liability attaches to Lewis under § 1984. The only contact he ever had with the bike was the recordation of its mileage in response to Charles Mangiarelli's telephone call. If the presumption of fraud extends to Lewis, then all of the employees who work at the Thomas used car lot would be similarly liable simply because of their access to the Kawasaki. The same could be said of all of the members of the Thomas

household. Given the lack of positive evidence that Lewis had anything to do with the odometer adjustment, the Court shall limit the inference of intent to defraud to the owner.

The Court further holds that Thomas and Lewis, while acting in his capacity as an agent for Thomas, violated 15 U.S.C.A. § 1988 (Supp.1978). Thomas executed transfer of ownership papers and delivered these documents to Lambson without preparing an odometer certification as required by 49 C.F.R. § 580.4 (1977). This omission constitutes a violation of § 1988(b). Moreover, Lewis accepted the odometer mileage provided to him by Bryant as true, despite the existence of a prior and inconsistent odometer certification in the files of Thomas Auto. If Lewis, or any other employee of Thomas Auto, had referred to the documents within their possession, the higher mileage would have been readily apparent. No purpose is served in requiring a transferor to fill out a mileage certification if that document is not examined and compared with the actual odometer reading at the time of a subsequent sale. As the records of the purchase of the motorcycle were under Lewis' supervision by his own admission in his deposition, an exercise of due diligence would have revealed the existence of the mileage discrepancy. The failure of Lewis to investigate the records available constitutes a breach of § 1988. *Clayton v. McCary, supra,* 426 F.Supp. at 257. His certification of the mileage amounts to recklessness which "rises to the level of fraudulent intent." *Kantorczyk v. New Stanton Auto Auction, Inc.,* 433 F.Supp. 889, 893 (W.D.Pa.1977). The Court finds that Robert Thomas, both individually and through his agent, violated § 1988 with intent to defraud.

Rich Lewis, the manager of Thomas' sole proprietorship, cannot be held liable for a violation of § 1988. He does not fall within the definition of "transferor" contained within 15 C.F.R. § 580.3 (1977). As § 1988 applies only to title transferors, only Thomas, the sole proprietor of Thomas Auto, is accountable for the violation. *Duval v.*

*Midwest Auto City, Inc.,* 578 F.2d 721, 724–25 (8th Cir. 1978); *Romans v. Swets Motors, Inc.,* 428 F.Supp. 106, 107–08 (E.D.Wis. 1977).

As insufficient evidence exists to find that Thomas and Lewis conspired to violate the Motor Vehicle Information and Cost Savings Act, the Court will not hold the defendants liable under 15 U.S.C.A. § 1986 (1974).

An order has been entered contemporaneously herewith in accordance with this Memorandum Opinion.