**Mary Ann Boyd OETTINGER, Plaintiff,**

v.

**LAKEVIEW MOTORS, INC., Defendant.**

**Civ. A. No. 87–0493–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

Jan. 7, 1988.

Anton J. Stelly, Coates & Davenport, Richmond, Va., for plaintiff.

Theodore I. Brenner, Stephen W. Bricker, Bremner, Baber & Janus, Richmond, Va., for defendant.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge:

This case was tried to the Court without a jury on the plaintiff's claims of odometer fraud, alleging violations of both federal and state statutes. At the conclusion of

the trial, the Court found the defendant Lakeview Motors, Inc., liable to the plaintiff for a violation of 15 U.S.C. § 1989, the federal Motor Vehicle Information and Cost Savings Act.

This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law, in accordance with Rule 52(a), Fed.R. Civ.P.

## I. *The Federal Statute*

Mrs. Oettinger brings her claim under 15 U.S.C. §§ 1988 and 1989, the liability provisions of the federal odometer fraud statute. This Court has jurisdiction under 15 U.S.C. § 1988(b) and 28 U.S.C. § 1331 (federal question).

Counts two and three of the plaintiff's complaint are brought, in the alternative, under two respective Virginia state statutes: the Virginia Consumer Protection Act, *Va.Code* § 59.1–200 et seq.; and the Virginia odometer tampering statute, *Va. Code* § 46.1–15.1. Because these counts were pleaded in the alternative, the finding of federal statutory liability precludes the need for the Court to rule on them.

The primary section of the federal statute, 15 U.S.C. § 1989, reads as follows:

(a) Any person who, with intent to defraud, violates any requirement imposed under this title [§§ 1981 et seq.] shall be liable in an amount equal to the sum of—

(1) three times the amount of actual damages sustained or $1,500, whichever is the greater; and

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with reasonable attorney fees as determined by the court.

Subsection 1989(b) authorizes private civil actions to be brought without regard to the amount in controversy.

Section 1988 of the statute, which Lakeview is alleged to have violated, imposes certain disclosure requirements on those selling motor vehicles. Section 1988(a) requires the transferor to make the following "written disclosure to the transferee in connection with the transfer of ownership of a motor vehicle":

(1) Disclosure of the cumulative mileage registered on the odometer. (2) Disclosure that the actual mileage is unknown, if the odometer reading is known to the transferor to be different from the number of miles the vehicle has actually traveled.

Subsection (a) also authorizes regulations which "shall prescribe the manner in which information shall be disclosed under this section and in which such information shall be retained." The Secretary of Transportation has promulgated such regulations, and 49 C.F.R. § 580.4 requires all transferors to give the customer a written odometer certification of the car's actual mileage.

Finally, 15 U.S.C. § 1988(b) states that "no transferor shall violate any rule prescribed under this section or give a false statement to a transferee in making any disclosure required by such rule." Therefore, a dealer who gives a false odometer statement to a customer violates § 1988; if he does so with intent to defraud, then he is civilly liable under § 1989. *See Nieto v. Pence,* 578 F.2d 640 (5th Cir.1978); *Jones v. Fenton Ford, Inc.,* 427 F.Supp. 1328 (D.Conn.1977).

## II. *Findings and Conclusions*

Pursuant to Rule 52(a), the Court on the basis of all the evidence introduced at trial, makes the following findings of fact and conclusions of law:

1. On July 30, 1984, Lakeview Motors sold one 1981 Buick Century bearing VIN 1G4AL69A6BH122906 to the plaintiff, Mary Ann Boyd Oettinger. The sale price was $7,000. The defendant has admitted this fact, and it was proved at trial.

2. At the time of sale, the odometer reading on the car was 40,141 miles. Lakeview completed an odometer mileage statement, certifying to the plaintiff in writing that, to the best of its knowledge, this reading showed the actual mileage on the car. This mileage certification was required by law. 15 U.S.C. § 1988(a); 49 C.F.R. § 580.4 (1986). Lakeview has admit-

ted this fact; it is also shown by its Ex. 2, and Pltf's Exs. 3 and 4.

3. At the time of sale, the actual mileage on the car was some 35,000 miles higher than that shown on the odometer. This meant the actual mileage the car had traveled was in excess of 75,000 miles. *See* Pltf's Exs. 3 and 4. Lakeview also conceded this fact at trial.

4. Lakeview Motors was a "transferor" within the meaning of 15 U.S.C. § 1988(a). A transferor for purposes of § 1988 is any person who transfers his ownership in a motor vehicle, by sale, gift, or any means other than by creation of a security interest. 49 C.F.R. § 580.3; *Duval v. Midwest Auto City, Inc.*, 578 F.2d 721, 725 (8th Cir.1978).

5. In purchasing the car, the plaintiff relied upon the odometer's mileage reading and Lakeview's certification that it was accurate. She would not have purchased this 1981 Buick had she known that it actually traveled over 75,000 miles; nor would she have paid $7,000 for the car.

██ Plaintiff need not show her reliance on the odometer statement in order to prove a violation and § 1989 liability; the statute does not require the plaintiff to prove reliance in order to recover for a false statement. *Ryan v. Edwards*, 592 F.2d 756, 761 (4th Cir.1979). However, such reliance is necessary to show the plaintiff's actual damages and the amount thereof.

6. When the car was sold to the plaintiff, the only certificate of title covering the car was that issued on May 21, 1984 by the State of Michigan. General Motors Acceptance Corp. (GMAC) was then the owner of the car; the chain of title from GMAC to the plaintiff consisted of the reassignments of the car's title, accompanying the Michigan title certificate. (The original Michigan certificate of title was introduced at trial, as part of the Michigan Dept. of State's documents covering the 1981 Buick; these have since been marked as Pltf's Ex. 26.)

Prior to the sale to Mrs. Oettinger, the title was transferred by reassignment from dealer to dealer some five times in all. When Lakeview Motors purchased the Buick from Johnny's Used Cars at the High Point Auto Auction in North Carolina, Lakeview obtained all the documents of title, including the Michigan title and the several reassignment documents. *See* Pltf's Exs. 3, 4, 25. Accordingly, Lakeview had notice and constructive knowledge of all information contained in those title documents.

7. The mileage number written on the rear of the Michigan title certificate was irregular and suspicious in appearance. It appears to have been physically altered from an original number of "72521" miles to a forged number of "37,252.1" miles. *See* Pltf's Ex. 26. At trial, two experts on odometer fraud testified on behalf of plaintiff. They were Mr. William Burton, of the Bureau of Auto Odometer Investigation, Michigan Dept. of State; and Mr. David E. Johnson, Investigative Supervisor, Dept. of Odometer Fraud, Virginia Division of Motor Vehicles.

As both investigators testified, several features indicate that the mileage number on the rear of Michigan title had been altered: (1) the digit 3 is imposed over some print on the form, and appears out of place and to have been added at a later time; (2) the comma between the 7 and 2 appears forcibly inserted where it does not belong, since the space between the digits 7 and 2 is too narrow for it; (3) the decimal point before the final digit 1 appears artificial, since there is insufficient space for it; and as the investigators stated, such decimal points are not common in odometer mileage statements; finally, (4) the entire number of "37,252.1" appears to have been written or traced over a second time, later than the original writing, and perhaps in a heavier or different ink than the original. This seems to have been done in an attempt to make all digits appear as if they were written at one time, together.

Moreover, the "37,252.1" figure on the back of the Michigan title is highly dubious when compared to the prior reassignment documents that accompanied the car and the odometer mileage statements complet-

ed by previous owners. The defendant Lakeview took possession of the title documents when it purchased the car at the N.C. auction. The prior reassignment records show the following sequence of mileage figures, at each transfer in the chain of title from GMAC to the plaintiff (Pltf's Exs. 3, 4, 25 and 26):

GMAC, transfer on 5/29/84

"37,252.1"     (rear of Mich. title)

Pasco Motors, Inc., transfer on 6/5/84

"OR 37300"     (rear of Mich. title)

Pinewood Motors, transfer on "6/84"

"OR 38,143"     (Mich. reassignment document)

Burcham Motors, transfer on 6/21/84

"39,625"     (Tenn. reassignment document)

Johnny's Used Cars, transfer on 6/26/84

"34,688"     (N.C. reassignment document)

Lakeview Motors, transfer on 7/30/84

"40,141"     (Va. reassigment document; Lakeview's odometer statement to plaintiff)

Mrs. Oettinger

In addition, there is a large discrepancy between the mileage figures shown on the reassignment documents and those shown on the official odometer statements filed by Pasco Motors and Pinewood Motors. Pasco Motors' official odometer statement showed a mileage reading of 72,589.9, while Pinewood Motors' odometer statement reads 72,599.9 miles. *See* Pltf's Exs. 3, 4. These figures are to be compared with the substantially lower figures listed on Pasco's and Pinewood's reassignment documents—37,300 and 38,143 miles respectively.

From this documented sequence of figures, two suspicious facts immediately stand out for any observer: *First*, the mileage reading shown on the reassignment documents actually dropped by nearly 5000 miles between the purchase by Johnny's Used Cars and its sale to Lakeview Motors. The documents (Pltf's Ex. 4) show a reading of *39,625* for June 21, 1984 when the car was sold to Johnny's Used Cars; on

June 26, 1984, at the time Johnny's sold the car to Lakeview, the mileage reading on the reassignment papers was recorded as *34,688*. From this paper trail, it is obvious either that the car's mileage was rolled back in the five day interim, or that the figures were incorrectly recorded. (The latter is quite possible, since the odometer statement filed by Johnny's shows a mileage figure of 3*9*,688—although the 9 appears darker than the other digits, as if heavily written over more than once.) Nonetheless, these reassignment records were all available and passed on to Lakeview at the time it purchased the car; it thus had notice, if not actual knowledge, of the irregularity.

*Second*, the official odometer statements (Pltf's Ex. 3) filed by both Pasco and Pinewood Motors reflect far higher mileage numbers than those figures shown on the reassignment documents. When Pasco sold the car, its odometer statement read 72,589.9 miles, while its reassignment paper recorded 37,300; when Pinewood sold the car, its odometer statement read 72,599.9 miles, while its reassignment document showed 38,143 miles. The discrepancy in each case is approximately 35,000 miles. These figures would have put any observer on notice of the mileage gap and the likelihood of odometer fraud. Granted, from the evidence at trial it was not clear whether Lakeview had access to or saw these prior odometer statements, when it purchased the car at the auction. Nonetheless, it probably would have discovered these higher-mileage odometer statements had it investigated further, after having been notified of the inexplicable mileage decline from 39,625 to 34,688 miles.

### III. *Lakeview's Recklessness and Intent to Defraud*

■ On the basis of all the evidence introduced at trial, the Court concludes that Lakeview acted with fraudulent intent when it certified to the plaintiff that the car's odometer reading was accurate. Once it purchased the car, Lakeview was or should have been aware of the facts indicating odometer tampering. Having re-

ceived through the title documents a reason to suspect the odometer of fraudulent tampering, Lakeview is deemed to have known all that a minimal inspection would have revealed. Finally, the inference of intent to defraud is made all the more compelling by Lakeview's behavior in the face of suspicious circumstances: it displayed willful ignorance and reckless disregard of the truth when it certified to the plaintiff that, "to the best of its knowledge," the odometer reading was correct. Even the faintest effort at ascertaining the true facts would have told Lakeview otherwise.

As the evidence demonstrates, prior to the sale to Mrs. Oettinger, Lakeview had ample basis for suspicion or reason to know that something was wrong with the odometer. Once a dealer has notice of grounds for suspecting an odometer's inaccuracy, the law imposes on him a duty of further inquiry. The dealer must then investigate the facts in order to ascertain whether the odometer's mileage reading is reliable, before certifying it as such; *or,* if he chooses not to do this, then he is legally bound to inform the customer that he suspects the odometer is incorrect and that it should not be relied upon. *See* 15 U.S.C. § 1988(a); 49 C.F.R. §§ 580.4, 580.6; *Nieto v. Pence,* 578 F.2d 640, 642 (5th Cir.1978); *Tusa v. Omaha Auto Auction, Inc.,* 712 F.2d 1248, 1252–54 (8th Cir.1983).

As the legislative history of § 1988 indicates, a dealer like Lakeview had an "affirmative duty to disclose that the actual mileage was unknown if, in the exercise of reasonable care, he would have had reason to know that the mileage was more than that which the odometer had recorded or the previous owner had certified." *Nieto v. Pence,* 578 F.2d at 642 (citing Senate Report to § 1988, 1972 U.S.Code Cong. & Admin.News, p. 3960 at 3971–72); *Tusa v. Omaha Auto Auction,* 712 F.2d at 1253.

█ Actual knowledge of the tampering is not required in order for a dealer to be held liable under 15 U.S.C. § 1989. Rather, constructive knowledge, recklessness or even gross negligence in determining and disclosing a car's actual mileage are suffi-

cient to support a finding that the dealer acted with intent to defraud. *Ryan v. Edwards,* 592 F.2d 756, 762 (4th Cir.1979); *Nieto v. Pence,* 578 F.2d at 641–42 (5th Cir.1978); *Tusa v. Omaha Auto Auction,* 712 F.2d at 1253 (8th Cir.1983). As the Fifth Circuit held in *Nieto:*

> [A] transferor who lacked actual knowledge may still be found to have intended to defraud and thus may be civilly liable for a failure to disclose that a vehicle's actual mileage is unknown. A transferor may not close his eyes to the truth. If a transferor reasonably should have known that a vehicle's odometer reading was incorrect, although he did not know to a certainty the transferee would be defrauded, a court may infer that he understood the risk of such an occurrence.

*Nieto v. Pence,* 578 F.2d at 642.

Thus, a dealer is subject to liability where he recklessly disregards the truth as to a car's actual mileage. As another court elaborates, such fraudulent intent may be inferred and:

> civil liability may be imposed where it is proved that a defendant's statements were made recklessly or carelessly, without knowledge of their truth or falsity, or without reasonable grounds for belief in their truth, especially in a case where (1) the defendant was under a duty to have the knowledge in question, (2) a relation of trust or expert reliance existed, (3) a statement was made to induce a business arrangement, or (4) the knowledge or information in question was within the special province of the defendant. Such conditions being met, it does not matter whether or not the declarant actually believed the statement (or statements) in question to be true. [citations omitted.]

*Jones v. Fenton Ford, Inc.,* 427 F.Supp. 1328, 1334 (D.Conn.1977); *Bryant v. Thomas,* 461 F.Supp. 613, 616 (D.Neb. 1978); *Aldridge v. Billips,* 656 F.Supp. 975, 978 (W.D.Va.1987). In the instant case, at least two and probably three of these conditions have been satisfied. The defendant Lakeview was under a duty to have the

knowledge in question before it certified the odometer reading; the information was peculiarly available to Lakeview as a dealer, and not readily accessible to the buying public; and, very probably, the odometer statement was made in part to induce the sale of the car. Consequently, under these conditions, it is fair to infer from Lakeview's recklessness that it acted with intent to defraud some purchasers.

In *Tusa v. Omaha Auto Auction,* the Eighth Circuit followed the federal courts which "have been willing to infer an intent to defraud where the seller exhibited gross negligence or a reckless disregard for the truth in preparing odometer disclosure statements." *Tusa,* 712 F.2d 1248, 1253 (8th Cir.1983) (citing *Ryan* and *Nieto* ). Such inferences are inevitable, because the "wrongdoer's intent to defraud is ordinarily proved by circumstantial evidence." *Id.,* 712 F.2d at 1253. As the court explained:

> The approach taken by the great majority of courts is sensible. If a person violates an odometer disclosure requirement with actual knowledge that he is committing a violation, a fact finder can reasonably infer that the violation was committed with intent to defraud a purchaser. Likewise, if a person lacks knowledge that an odometer disclosure statement is false only because he displays a reckless disregard for the truth, a fact finder can reasonably infer that the violation was committed with an intent to defraud a purchaser. The inference of an intent to defraud is no less compelling when a person lacks actual knowledge of a false odometer statement only by "clos[ing] his eyes to the truth." *Nieto,* 578 F.2d at 642.

*Tusa v. Omaha Auto Auction,* 712 F.2d at 1253–54.

In the *Tusa* case, the district court found that the mileage number on the car's title had been physically altered. The Court of Appeals agreed with that finding, and stated that the district court "reasonably inferred that the failure to investigate in the face of an obvious change on the title was due to an intent on OAA's part to defraud the purchaser." *Id.,* 712 F.2d at 1254. The facts also showed that OAA made "no ef-

fort to obtain any previous disclosure statements," and that OAA's disclosure statement relied on nothing but the car's odometer reading. The court's conclusion is applicable to the instant case: "OAA's method of compiling the disclosure statements shows a total disregard for the purposes of the Act. The district court could reasonably infer that OAA's disregard for making accurate disclosure statements stemmed from an intent to defraud purchasers." *Tusa v. Omaha Auto Auction,* 712 F.2d at 1254 (8th Cir.1983).

From the collection of title documents which Lakeview obtained when it purchased the 1981 Buick Century at the auction in North Carolina, it was given reason for suspecting the odometer. The mileage number written on the back of the Michigan title had been physically altered, and the alteration is apparent. The number was sufficiently irregular as to inform any reasonable person that something was out of order, and to put the dealer on notice that he must look more closely before certifying the car's mileage reading as correct. In addition, the mileage decline of some 5000 miles, shown in the reassignment documents surrounding the brief ownership of Johnny's Used Cars, indicates a real likelihood of odometer roll-back and fraud.

■ Again, any dealer in this situation is required by federal law either (1) to investigate further, in order to ascertain the accuracy of the odometer's current reading; or (2) to inform the customer purchasing the car that the dealer does not know whether the odometer's reading is correct or not; in fact, he has reason to suspect it of being tampered. *Nieto v. Pence,* 578 F.2d at 642 (5th Cir.1978); *Tusa v. Omaha Auto Auction,* 712 F.2d at 1253 (8th Cir.1983); 15 U.S.C. § 1988(a)(2); 49 C.F.R. § 580.4.

The dealer confronted with such suspicious circumstances must avail himself of all information at his disposal; he is specifically obligated to review carefully all documents relating to the title and mileage of the car. He may even be required to check into the official motor vehicle records of

those states where the car has been located.

In this case, the evidence showed that the Lakeview dealers had been buying and trading used cars for over 35 years, and that during this time they followed the same deficient procedure when checking the cars for odometer accuracy. They would purchase cars on the basis of their customary "once over," checking only the physical appearance and condition of the car (its paint, body, cleanliness, etc.). This superficial examination regularly involved a brief review, or none at all, of the car's title documents. Indeed, the evidence leads one to believe that Lakeview's agents routinely ignored the title documents, relying instead on the title work allegedly done by the clerks of the auction house. However, contrary to the testimony of Goode and Vernon Toones, the auction in this case did *not* guarantee the accuracy of the odometer reading; in fact, the sales form from the High Point Auto Auction contains an express disclaimer stating that the Auction "assumes no responsibility nor guarantees the accuracy of the odometer reading." *See* Pltf's Ex. 25.

Such pat indifference to the odometer's accuracy ignores the purpose and requirements of the federal statute. The statute is designed to compel used car dealers to inquire into the facts, especially into the chain of title documents listing the car's purported mileage. *Tusa,* 712 F.2d at 1254; *Aldridge v. Billips,* 656 F.Supp. 975, 978 (W.D.Va.1987); *Bryant v. Thomas,* 461 F.Supp. at 618 (D.Neb.1978). In this case, the evidence showed that had the Lakeview dealers paid even passing honest scrutiny to the title documents for the 1981 Buick, they would have become suspicious of the number purporting to state the car's actual mileage.

Lakeview's agents possessed reason to know; they were on notice that something could well be wrong with the mileage reading, and yet they failed to act. The law does not and cannot tolerate such willful ignorance in the face of obvious warning signs—signs that would have moved reasonable people to undertake further inquiry.

Under these circumstances, this Court is led to conclude that Lakeview's failure to investigate and its reckless disregard for making accurate odometer statements "stemmed from an intent to defraud purchasers" in general, if not the plaintiff in particular. *Tusa v. Omaha Auto Auction,* 712 F.2d at 1254.

As in *Aldridge v. Billips,* the defendant dealer "with the exercise of minimal care" could have discovered that the odometer reading it was certifying was false. *Aldridge,* 656 F.Supp. 975, 978 (W.D.Va. 1987). Such minimal care would have involved an honest inspection of the car's title documents and probably even its prior odometer statements. The title documents themselves provided "obvious indications" that the odometer reading was unreliable. *See Aldridge,* 656 F.Supp. at 978.

As other courts have concluded in similar cases, "to make affirmative claims about mileage without knowledge is either intentionally deceitful or reckless, and therefore a violation of 15 U.S.C. § 1989." *Aldridge,* 656 F.Supp. at 979. In the face of prior odometer recordings that were inconsistent or obviously altered, the defendant's "certification of the mileage amounts to recklessness which rises to the level of fraudulent intent." *Bryant v. Thomas,* 461 F.Supp. 613, 618 (D.Neb.1978); *Aldridge,* 656 F.Supp. at 978–79.

Consequently, the only fair conclusion this Court is able to draw is that, in certifying the car's mileage to Mrs. Oettinger, Lakeview through its agents acted with intent to defraud. Lakeview is therefore liable to Mrs. Oettinger for violating 15 U.S.C. §§ 1988, 1989.

### IV. *Measure of Damages*

Under 15 U.S.C. § 1989(a), Mrs. Oettinger is entitled to recover three times the amount of her actual damages sustained, or $1500, whichever is greater. As a successful plaintiff, she is also entitled to recover the costs of this action and her reasonable attorney's fees, as determined by the Court.

Her actual damages are to be measured by the purchase price she paid for the car, less the fair market value of the car with its higher actual mileage, plus any expenses shown to be attributable to the wrongful acts of the defendant. *Williams v. Toyota of Jefferson, Inc.,* 655 F.Supp. 1081, 1085 (E.D.La.1987); *Duval v. Midwest Auto City, Inc.,* 425 F.Supp. 1381, 1388 (D.Neb.1977), *aff'd* 578 F.2d 721 (8th Cir.1978).

On the evidence introduced at trial, the Court finds that the plaintiff has proven the following elements of actual damage: (1) $675 in the loss of value of the car, attributable to the car's higher actual mileage; (2) $764.40 in repairs to the car, replacing the cam shaft—a repair attributable to the car's extra mileage; (3) $200 for excessive oil use, caused by the wear resulting from the higher mileage; (4) $100 in extra insurance premium costs, attributable to the false lower mileage reading; and (5) $17.00 as the proportionate share of the car's license and titling fees (approximately 10% of the $171 total, since the car's actual value was approximately 10% below the sales price.) (Exs. 10, 11.)

These elements total an amount of $1756.40 in actual damages; since the plaintiff has a statutory right to treble damages, she shall be awarded $5269.20.

The plaintiff requested a number of elements of damages that the Court is not awarding. Plaintiff's appraisal expert, John Brauns, testified that with the higher mileage the car was worth only $5000, resulting in a loss in value of some $2000. However, Mr. Brauns did not rely on the industry valuation books (the so-called "Bluebook" and "Blackbook") in forming this specific appraisal opinion, and he could not explain how he arrived at the figure of $2000. The Court finds the $675 loss-in-value figure, supplied by defendant's appraiser Kenneth Snyder, to be more persuasive. For his valuation estimate, Mr. Snyder relied on the *NADA Official Used Car Guide* for July 1984 (the "Bluebook").

The Court is also disallowing a number of other repair costs which the plaintiff seeks to recover, because the Court is not persuaded on the evidence that these costs were legitimately attributable to, or proximately caused by, the undisclosed higher mileage. *See Duval v. Midwest Auto City,* 425 F.Supp. at 1388 (D.Neb.1977), *aff'd* 578 F.2d 721 (8th Cir.1978); *Williams v. Toyota of Jefferson,* 655 F.Supp. at 1085 (E.D. La.1987).

## CONCLUSION

In summary, the facts proven at trial convincingly show that Lakeview acted with reckless disregard of the car's actual mileage and with fraudulent intent when it sold the car to the plaintiff and certified the odometer's reading as reflecting the car's actual mileage. Lakeview Motors is therefore liable under 15 U.S.C. § 1989 for the plaintiff's trebled damages.

As noted earlier, the plaintiff is entitled by statute to recover her reasonable attorney's fees and the costs of this action. The parties are hereby instructed to submit briefs detailing their views on the amount of plaintiff's properly recoverable costs and attorney's fees, paying special attention to the guidelines reviewed by this Court in *Espinoza v. Hillwood Square Mutual Ass'n,* 532 F.Supp. 440, 443–53 (E.D.Va. 1982). The plaintiff shall file a detailed brief, along with attorneys' time records, within five (5) days from the date of this Opinion. No later than five (5) days thereafter, the defendant shall file its brief in response. Upon receiving the submissions and considering the matter, the Court will then enter a final order granting judgment to the plaintiff and assessing damages, costs and attorney's fees.

An appropriate order shall issue.