**Daniel Norman RYAN, Appellant,**

v.

**E. W. EDWARDS, Jr., Tappahannock Ford, Inc., John C. DuVal, Individually, Appellees.**

No. 77–2211.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 5, 1978.

Decided Feb. 23, 1979.

Willis J. Spaulding, Norfolk, Va. (Howell, Anninos, Daugherty & Brown, Norfolk, Va., on brief), for appellant.

Timothy W. Finchem, Virginia Beach, Va. (Croshaw, Finchem & Williams, Virginia Beach, Va., on brief), for appellee E. W. Edwards, Jr.

William S. Hayes, Jr., Tappahannock, Va. (William L. Lewis, Lewis & Spruill, Tappahannock, Va., on brief), for appellees Tappahannock Ford, Inc. and John C. DuVal.

Before HAYNSWORTH, Chief Judge, and HALL and PHILLIPS, Circuit Judges.

K. K. HALL, Circuit Judge:

In this action we are called upon to construe the mileage disclosure requirements of 15 U.S.C. § 1988 as they apply to an odometer which has "turned over" after registering 100,000 miles.

Plaintiff/appellant Ryan, purchaser of a used automobile, brought the action against defendant Edwards, a used car dealer, defendant Tappahannock Ford, Inc., an automobile dealership, and defendant DuVal, the president and salesman of Tappahannock.[1] The district court directed a verdict

---

1. Ryan sought to recover minimum statutory damages from each of the defendants, together with costs and attorney fees, all as provided in 15 U.S.C. § 1989.

for Tappahannock and DuVal, and entered judgment n. o. v. for Edwards, reversing a jury verdict.[2]

On appeal, Ryan contends that § 1988 requires disclosure of the fact that an odometer has "turned over," that statutory liability lies against persons not in privity with the plaintiff/purchaser, that actual reliance on misleading statements need not be proved to establish liability, and that a corporation's officer/salesman is liable under the Act even if he has no ownership interest in the automobiles sold.

Agreeing with each of these arguments except the last, we affirm as to DuVal, reverse as to Edwards, and remand for a new trial as to Tappahannock.

## I. FACTS

Because Ryan's appeal is from a judgment n. o. v. and directed verdicts, we must view the evidence in the light most favorable to him and give him the benefit of all inferences which the evidence fairly supports. *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962). When so viewed, the evidence reveals the following transactions.

On August 13, 1976, John DuVal, president of Tappahannock Ford, Inc., a dealership in Tappahannock, Virginia, sold several cars including a four year old station wagon to E. W. Edwards, Jr., knowing that Edwards intended to immediately resell the vehicles. During the preceding six months, Tappahannock had been a party to three other sales transactions concerning the same station wagon, and its files contained odometer mileage statements prepared for each of those prior transactions. All of these forms showed the vehicle's total mileage to be in excess of 100,000 miles.[3]

On the date of the sale to Edwards, the vehicle's odometer registered 13,175 miles.

DuVal told Edwards that the car was a "high mileage" vehicle, and the $1150 sale price reflected this fact. There was no reason to suspect that the odometer was not functioning properly, and DuVal testified that he had assumed that the odometer had "turned over" upon reaching its mechanical limit of 99,999 miles, making the vehicle's actual mileage 113,175. DuVal also testified that when he completed the odometer mileage statement required by 15 U.S.C. § 1988, he did not remember what mileage had been certified during the previous sales of the vehicle, and did not check Tappahannock's files for the information.

The form used by defendants to make the required mileage disclosure provided a blank on which to record the odometer reading and a second blank on which to record the vehicle's "total cumulative miles, if over 100,000." DuVal simply entered the figure 13,175 as the odometer reading, left the second blank empty, and checked a box provided on the form to indicate that the true mileage was unknown. He then gave the form to Edwards, assuming that Edwards would show the certificate to the ultimate purchaser of the vehicle.

Two days later Edwards sold the car to Ryan, who had responded to a newspaper advertisement placed by Edwards which described the vehicle as a "low mileage . . . pampered family car." According to Ryan, Edwards told him that the vehicle's odometer had been broken for a period of time, during which the car had been driven 20,000 miles, and that the actual mileage was approximately 32,000 miles. Edwards showed Ryan the odometer mileage statement which had been prepared by DuVal, and then completed and gave to Ryan a new form, completed exactly like DuVal's. Ryan asked for the title certificate at this time and Edwards, explaining that it was not in his possession, promised to deliver it within a few days. Ryan paid the $1695

2. The jury also decided against the seller in his cross-claim against the wholesaler. This verdict, which the district court let stand, has not been appealed.

3. The title certificate for the vehicle, which disclosed a mileage of 110,020 as of April 9, 1976, was in the possession of a bank holding a lien on the vehicle, and was not seen by any of the parties until after the sale to Ryan.

asking price and took possession of the vehicle.

Several days later Edwards obtained the title certificate through Tappahannock and gave it to Ryan. When Ryan questioned the 110,020 mileage figure on the certificate, Edwards explained it as a clerical error. Later that day Ryan, now disbelieving Edwards' mileage claims, called Edwards and attempted to rescind the sale. Edwards refused, and Ryan brought this action, seeking statutory damages from Edwards, DuVal and Tappahannock.

## II. THE STATUTORY REQUIREMENTS

Title IV of the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. § 1988(a) requires that the following disclosures be made when ownership of a motor vehicle is transferred:

(1) Disclosure of the cumulative mileage registered on the odometer.

(2) Disclosure that the actual mileage is unknown, if the odometer reading is known to the transferor to be different from the number of miles the vehicle actually traveled.

Section 1988(b) additionally provides:

No transferor shall violate any rule prescribed under this section or give a false statement to a transferee in making any disclosure required by such rule.

■■■■ The statute is obviously remedial in nature, and should be broadly construed to effectuate its purpose. *Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). Both the language of the statute and its history show that it has

one purpose: to enable the purchaser of a motor vehicle to know how many miles the vehicle has traveled, as a guide to its safety, reliability and value.[4] The requirement imposed by § 1988(a) is simple. Every person purchasing a car must be given a written statement of the vehicle's mileage if it is known.

## III. DISCLOSURE REQUIREMENTS WHEN ODOMETER HAS "TURNED OVER"

■■■■ The district court held that Edwards had accurately disclosed "the cumulative mileage registered on the odometer", as required by § 1988(a)(1), by simply entering the figures appearing on the odometer, and that he had fully complied with § 1988(a)(2) by indicating that the true mileage was unknown since even if he believed that the odometer had "turned over" he could never be absolutely certain of this. Holding that § 1988(b) prohibits only the entry of false statements on the odometer mileage form, the court thus concluded that Edwards' actions satisfied the requirements of the Act. We disagree.

When a transferor who knows that an odometer has "turned over" merely records the numbers appearing on the odometer and certifies that the true mileage is unknown, the consumer is not simply deprived of accurate mileage information; he is actually misled by the form itself. We cannot believe that Congress intended to enact a statute requiring that consumers be given false or misleading information.

We hold when a transferor knows that a vehicle's odometer has "turned over" after registering 99,999 miles,[5] the "cumulative

---

**4.** This goal is served by the provisions of the statute which prohibit tampering with odometers. It is also served by the separate and distinct requirement of § 1988 that purchasers be given a written statement of the vehicle's mileage.

The district court apparently interpreted the statute as being concerned only with odometer tampering, an offense which is not alleged here. Although §§ 1983–85 of the statute deal with odometer tampering, the tampering prohibition and the mileage statement requirement are two

separate methods of achieving the goal of full disclosure.

**5.** The knowledge of the "turn over" which the transferor must have is not the absolute certitude assumed by the district court. If, in the exercise of reasonable care, he would have had reason to know that the odometer had "turned over", he must disclose this fact on the odometer mileage statement. *See Nieto v. Pence*, 578 F.2d 640 (5th Cir. 1978). *See also* Senate Report No. 92–413, *reprinted in* 1972 U.S.Code Cong. & Admin.News pp. 3960, 3971.

mileage" which must be stated to satisfy the requirements of § 1988(a)(1) is the total of 100,000 plus the number actually appearing on the odometer.[6] A transferor may certify the mileage as "unknown", § 1988(a)(2), only when he believes that, for some *other* reason, the odometer reading is inaccurate.[7]

This interpretation of § 1988 will not impose liability upon any transferors who, in good faith, interpreted the requirements of the statute in the same manner as did the district court, since § 1989 of the statute requires proof of intent to defraud before liability can be imposed.

## IV. OTHER FALSE CLAIMS REGARDING MILEAGE

We think that the district court was also incorrect in holding that § 1988(b) did not apply to the newspaper advertisement placed by Edwards, describing the car as a "low mileage" vehicle, or to any false oral statements concerning mileage which he made to Ryan. A transferor cannot insulate himself from liability under the statute by completing the odometer mileage statement correctly, and then contradicting that statement with false oral claims.

Ample evidence was produced at trial to support the jury's conclusion that Edwards knowingly provided false mileage information to Ryan either on the odometer mileage statement itself or in other representations he made, and that he did so with intent to defraud. The jury's verdict on this issue should be reinstated.

## V. REQUIREMENTS OF PRIVITY AND RELIANCE

The district court's directed verdict denying Ryan's claim against Tappahannock was based upon its erroneous conclusion that Tappahannock was immune from any liability to Ryan because of both the absence of any direct dealings between them and the court's finding that Ryan had not specifically relied on Tappahannock's false statements.[8]

We do not think the concept of privity can be used to bar a plaintiff's recovery under the statute. "The language in § 1989 'any person . . . shall be liable' indicates no intent to limit liability to the immediate seller of a motor vehicle, but to extend liability to and impose liability upon any person violating the law." *Stier v. Park Pontiac, Inc.*, 391 F.Supp. 397 (S.D.W. Va.1975). Nor does the statute's language require the plaintiff to prove his reliance on each false statement. *Delay v. Hearn Ford*, 373 F.Supp. 791 (D.S.C.1974). The dispositive finding is the transferor's intent to defraud, and Ryan may recover the statutory damages from each transferor in his

---

**6.** While we derive this interpretation from the face of the statute, regulations promulgated by the Secretary of Transportation, which became effective on January 1, 1978, and thus are not applicable to this case, provide a similar interpretation. The parties in this case apparently shared this interpretation, since the forms used by the defendants to make the required disclosure provided a special space to record mileage exceeding 100,000 miles. All parties also stipulated in pre-trial proceedings that the cumulative mileage of the vehicle was equal to the sum of the miles indicated on the odometer and 100,000 miles, and that defendants had a duty to state this cumulative mileage on the odometer disclosure form if it were known or could be determined in the exercise of reasonable care.

**7.** The absurdity of any other application of § 1988 to the case of an odometer which has turned over was pointed out by the court in *Rider Oldsmobile, Inc., v. Wright*, 415 F.Supp. 258 (M.D.Pa.1976) upon which the court below

relied. As the *Rider* court noted, although a literal reading of § 1988(a) could *require* the transferor to state that the actual mileage is unknown when he knows that the true mileage exceeds the figures appearing on the odometer by 100,000 miles, "[f]orcing him to state that the actual mileage was 'unknown' . . . would require him to violate § 1988(b), which makes it unlawful 'to knowingly give . . . a false statement to the transferee in making any disclosure . . . .'" 415 F.Supp. at 263.

We obviously part company with the *Rider* court in its conclusion that the statute imposes no duty upon a transferor in this situation beyond recording the numbers appearing on the odometer.

**8.** There was never any question that DuVal acted as the agent of Tappahannock at all times material to this case, and that his conduct is chargeable to the corporation.

chain of title who made false mileage statements with such intent.

 Constructive knowledge, recklessness, or even gross negligence in determining and disclosing the actual mileage traveled by a vehicle have been held sufficient to support a finding of intent to defraud under the statute. *Nieto v. Pence, supra.* The jury should have been permitted to decide whether Tappahannock's conduct, in providing a false mileage statement to Edwards with the knowledge that he would use it in an attempt to resell the vehicle, fairly implied an intent to defraud the ultimate purchaser of the vehicle.

## VI. LIABILITY OF OWNER'S AGENT FOR FALSE MILEAGE STATEMENTS

Because DuVal as an individual never had any personal ownership interest in the car purchased by Ryan, we think that the district court properly directed a verdict for him. Under §§ 1988–89, only a "transferor" can be held liable for a violation of the disclosure requirements. The regulations promulgated under the statute by the Secretary of Transportation define a "transferor" as "any person who transfers *his ownership* in a motor vehicle . . ." 49 C.F.R. § 580.3 (1973) (emphasis supplied).

In this case, the sole owner of the vehicle in question was Tappahannock, not DuVal. Therefore, DuVal was not a "transferor" and is not individually liable under the statute. *DuVal v. Midwest Auto City, Inc.,* 578 F.2d 721 (8th Cir. 1978). *Contra, Stier v. Park Pontiac, Inc., supra.*

## VII. CONCLUSION

The judgment of the district court directing a verdict in favor of DuVal is affirmed. The judgment n. o. v. in favor of Edwards is reversed, and the district court is ordered to enter judgment on the jury's verdict, awarding minimum statutory damages, costs and attorney fees, as provided in 15 U.S.C. § 1989. The judgment of the district court directing a verdict in favor of Tappahannock is reversed and this issue remanded for trial.

AFFIRMED IN PART: REVERSED AND REMANDED IN PART.