UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

ANTHONY NELSON,
  *Plaintiff-Appellant,*

v.

COWLES FORD, INCORPORATED,
  *Defendant-Appellee.*

No. 01-1526

ANTHONY NELSON,
  *Plaintiff-Appellee,*

v.

COWLES FORD, INCORPORATED,
  *Defendant-Appellant.*

No. 01-1587

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-00-1266-A)

Argued: February 25, 2002

Decided: October 7, 2003

Before WIDENER, WILLIAMS, and MOTZ, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** A. Hugo Blankingship, III, BLANKINGSHIP & ASSO-
CIATES, P.C., Alexandria, Virginia, for Appellant. Roger William
Heald, HOGAN & HEALD, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

We are presented in this action with a litany of issues stemming from Anthony Nelson's February 2000 purchase of a used Ford Expedition with an altered odometer from Cowles Ford, Inc. On appeal, Nelson contends that the district court erred in granting Cowles Ford judgment as a matter of law on Nelson's claims under the Federal Odometer Act and the Virginia Consumer Practices Act (VCPA). Nelson also contests the district court's calculation of his attorney's fees. Cowles Ford cross-appeals, asserting that the district court erred in granting Nelson judgment as a matter of law on Nelson's breach of contract claim. Finding no error, we affirm the district court.

I

On February 28, 2000, Nelson decided to purchase a used 1998 Ford Expedition from Cowles Ford. During negotiations Nelson inquired about the truck's mileage and accident history. After speaking with Cowles Ford finance officer Jeff Riddle, Nelson agreed to purchase the truck for approximately $36,000.00. Nelson also purchased an extended service contract for the truck for $1,906.96. While completing the requisite paperwork, including a buyer's order and retail installment sales contract, Cowles Ford provided Nelson with an Odometer Disclosure Statement. The statement represented that the truck had traveled 35,523 miles.

In order to process the service contract, Cowles Ford obtained an Oasis report for the truck. Oasis reports are supplied by Ford Motor Company and list the original service date, repair history and place of delivery of a vehicle. This report, which Cowles Ford possessed at the time of sale, disclosed the truck to be of Canadian origin. The truck's Canadian origin was discernable from other features as well; the vehicle identification sticker was imprinted with a maple leaf, the

truck had daytime running lights, as required by Canadian, but not U.S., law, and the owner's manual was, in Nelson's vernacular, written "[i]n Canadian." (J.A. at 76.)

Cowles Ford had purchased the Expedition from an auto wholesaler known as The Toy Store. At the time of that sale, The Toy Store disclosed the truck's odometer reading as 35,484 miles. The Toy Store acquired the truck at a Fredericksburg, Virginia auto auction without receiving notice, as mandated by Virginia law, of its Canadian origin. The Toy Store's principal and Cowles Ford's manager both testified that the truck's physical condition was consistent with the mileage reading on the odometer.

Because Cowles Ford was unable to find an assignee for the original retail installment contract, Nelson returned on March 8, 2000 to complete a new retail installment contract. On that date, Nelson signed the necessary paperwork, but Cowles Ford provided no updated odometer statement. In May 2000, less than three months after the transaction, Nelson received a letter from James F. Lancaster, Jr., a special agent with the Virginia Department of Motor Vehicles (DMV) odometer fraud division. The letter disclosed that the Virginia DMV, during an investigation into odometer fraud, had determined that Nelson's Expedition was sold at an auction in Canada in January 2000 with an odometer reading of 103,328 kilometers, or 64,063 miles. Agent Lancaster believed that the conversion from kilometers to miles was conducted improperly after the auction sale in Canada but before the truck was titled in Virginia with the odometer reading of 34,483 miles. The truck would have to be re-titled, Agent Lancaster explained, to reflect the fact that its current mileage was unknown.

Upon receipt of the letter, and after speaking with an official at the Virginia DMV, Nelson presented the letter to John Lynch, the Cowles Ford employee who sold him the truck, and was told that Cowles Ford would have to contact The Toy Store. Nelson sent a letter requesting that Cowles Ford replace the vehicle Nelson had purchased with a new Ford Expedition, to be financed over 72 months by Ford. Cowles Ford replied by offering to repurchase the vehicle for the price Nelson paid, minus an adjustment for Nelson's alleged "negative equity" in his trade-in, or to provide Nelson with compensation

of between $3,000 and $4,000 to reflect the actual worth of the vehicle. Nelson found both offers unacceptable and instituted this action in the United States District Court for the Eastern District of Virginia.

In his complaint, Nelson sought compensatory, statutory and punitive damages, in addition to attorney's fees, for violating the Federal Odometer Act and the VCPA. Nelson also included common law claims for breach of contract and fraud. Jurisdiction was proper under 28 U.S.C.A. § 1331 (West 1993) for the Federal Odometer Act claim. The district court exercised supplemental jurisdiction, as provided by 28 U.S.C.A. § 1367 (West 1993), over the state law claims. After the district court rejected Nelson's motion for summary judgment on the Odometer Act and VCPA counts, the court impaneled a jury and the trial commenced. At the close of Nelson's case, Cowles Ford made a motion pursuant to Fed. R. Civ. P. 50 for judgment as a matter of law in its favor, which the district court took under advisement. Nelson made the same motion at the conclusion of Cowles Ford's case. The district court granted Cowles Ford's motion as to all claims except for the breach of contract and granted Nelson's motion with respect to that claim. Judgment was entered in favor of Nelson on the breach of contract claim for $21,514.00.[1] Nelson timely appealed and Cowles Ford cross-appealed. Nelson then moved for an award of attorney's fees under the terms of his contract with Cowles Ford. The district court issued a memorandum opinion granting Nelson approximately 30% of his fee request, which Nelson also timely appealed. Therefore, the following issues are before us: (1) whether the district court erred in granting judgment as a matter of law to Cowles Ford on the Federal Odometer Act and VCPA counts; (2) whether the district court erred in granting judgment as a matter of law to Nelson on the breach of contract claim; and (3) whether the district court abused its discretion in setting the award of attorney's fees.

---

[1]Even though the district court dismissed the federal claim, it was within its discretion in maintaining jurisdiction over the state law claim. 28 U.S.C.A. § 1367(c)(3) (West 1993) (allowing district court to decline jurisdiction if court has dismissed claims it had original jurisdiction over).

## II

We review de novo the district court's grant of judgment as a matter of law, construing "the evidence in the light most favorable to the party against whom the motion was made." *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir.), *cert. denied*, 122 S. Ct. 342 (2001). During a jury trial, a Rule 50 motion should be granted only when a party "has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a). A mere scintilla of evidence introduced by the party with the burden of proof is insufficient. Instead, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986) (quoting *Improvement Co. v. Munson*, 14 Wall. 442, 448 (1872)). We review the district court's rulings on the three substantive claims before turning to the court's award of attorney's fees.

### *The Federal Odometer Act*

The Federal Odometer Act (the Act) requires persons transferring the ownership of a vehicle to disclose, in writing, "the cumulative mileage registered on the odometer." 49 U.S.C.A. § 32705(a)(1)(A) (West Supp. 2003). The Act prohibits the transferor from making a false statement in the disclosure. 49 U.S.C.A. § 32705(a)(2) (West Supp. 2003). We have interpreted this prohibition to mean that the Act is violated when the mileage posited on the disclosure statement fails to correspond with the vehicle's actual number of miles traveled, even if the stated mileage does correspond to the odometer reading at the time of sale.[2] *Ryan v. Edwards*, 592 F.2d 756, 760 (4th Cir. 1979). Cowles Ford does not dispute that the truck's actual mileage differed from the mileage listed on the disclosure statement or the odometer itself.

---

[2]In *Ryan v. Edwards*, 592 F.2d 756 (4th Cir. 1979), we interpreted the predecessor to the Federal Odometer Act, 15 U.S.C. § 1988, which required "[d]isclosure of the cumulative mileage registered on the odometer" and prohibited false statements in this disclosure.

Under the Federal Odometer Act, however, a private party can bring an action only where the transferor acted "with intent to defraud." 49 U.S.C.A. § 32710(a) (West 1997). Therefore, the issue here is whether Cowles Ford acted with "intent to defraud" as employed by the Act.

We have previously stated that a showing of "[c]onstructive knowledge, recklessness, or even gross negligence in determining and disclosing the actual mileage" is sufficient to allow the finder of fact to infer an intent to defraud.[3] *Ryan*, 592 F.2d at 762. For example, an auctioneer was found to have the requisite intent to defraud where it exhibited reckless disregard in preparing an accurate odometer statement by ignoring clear alteration and erasure marks. *Tusa v. Omaha Auto Auction, Inc.*, 712 F.2d 1248, 1254 (8th Cir. 1983). We have not yet addressed whether negligence alone suffices to allow the inference. Other courts have been unanimous in holding that "mere negligence in completing the required odometer statements will not lead to liability." *Huson v. General Motors Acceptance Corp.*, 108 F.3d 172, 173 (8th Cir. 1997); *see also Suiter v. Mitchell Motor Coach Sales, Inc.*, 151 F.3d 1275, 1284 (10th Cir. 1998) (same); *Diersen v. Chicago Car Exch.*, 110 F.3d 481, 488 (7th Cir. 1997) (same). We agree and hold that the phrase "intent to defraud" requires a showing of at least gross negligence on the part of the transferor before liability can be imposed. This holding means that a transferor who has reason to know that the odometer reading is inaccurate, based on readily ascertainable information from the state of the vehicle or the chain of title, cannot "clos[e] his eyes to the truth." *Suiter*, 151 F.3d at 1282 (quotation marks and citations omitted).

Applying the standard to the instant case, no rational fact finder could properly find that Cowles Ford possessed an "intent to defraud" Nelson. Nelson argues that the vehicle's Canadian origin, standing alone, was sufficient notice that the odometer may have been inaccurate. This is so, Nelson argues, because Cowles Ford knew, or should have known, that Canadian vehicles track distance in kilometers, not miles. Thus, because Cowles Ford should have known that the truck would have had its odometer converted upon its entrance into the

---

[3]In *Ryan*, the predecessor statute at issue, 15 U.S.C. § 1989, also required "proof of intent to defraud." *Ryan*, 595 F.2d at 761.

United States, Cowles Ford had a duty to ensure that the conversion was performed correctly. In other words, Nelson argues that Cowles Ford is under a higher duty when inspecting cars originally sold in Canada.

The difficulty with this argument, as Cowles Ford notes, is that no law forbids the resale of a vehicle originally sold in Canada. Car dealers are not held to a higher standard of care when reselling cars purchased from Canada. It is possible that a reasonable car dealer would have investigated the propriety of the odometer conversion, but a showing of gross negligence requires more. Gross negligence is negligence "magnified to a high degree," and "an act or omission . . . amount[ing] to indifference to present legal duty." *Black's Law Dictionary* 1033 (6th ed. 1990). Failure to investigate the odometer conversion of a vehicle originally sold in Canada may be negligence, but it is not gross negligence.

Nelson's reliance on our decision in *Ryan* is misplaced. In *Ryan*, we found that a finder of fact could infer an intent to defraud when the car dealer knew that the odometer had been "turned over" at 100,000 miles but explained to the consumer only that it had been "broken" for 20,000 miles. *Ryan*, 592 F.2d at 759. The dealer in *Ryan* also told the consumer that a title certificate showing the actual mileage to be 110,020, not 32,000, was a "clerical error." *Id.* at 760; *see also Tusa*, 712 F.2d at 1254 (fact finder could infer intent to defraud where title document in transferor's possession contained clear erasure mark and alteration). Here, there is no evidence that Cowles Ford had constructive or actual knowledge regarding the odometer's improper conversion or that Cowles Ford was grossly negligent in failing to investigate the truck's actual mileage. Given the evidence presented, we agree with the district court that no reasonable fact finder could infer that Cowles Ford possessed the intent to defraud Nelson.

### *The Virginia Consumer Practices Act*

The Virginia Consumer Practices Act, codified at Va. Code Ann. § 59.1-200 *et seq.* (Michie Supp. 2003), prohibits sellers from "misrepresenting" their goods. The VCPA does not include the phrase "intent to defraud" and, Nelson argues, the absence of this language

coupled with the availability of remedies for unintentional violations[4] shows that an intent to defraud is not an essential element of a claim for misrepresentation under the VCPA. We need not decide this issue of statutory interpretation today. Nelson cannot prove a willful violation of the VCPA, so his damages, under the plain language of the statute, would be limited to actual damages and attorney's fees. Va. Code Ann. § 59.1-204 (Michie 2001). Because we affirm the district court's judgment awarding actual damages on his breach of contract claim and its award of attorney's fees, see discussion *infra*, he has already received that relief. When a theory of recovery would not result in additional relief, a reviewing court need not address the district court's ruling on the merits of that claim. *Ibrahim v. N.Y. Dep't of Health*, 904 F.2d 161, 169 (2d Cir. 1990).

### Breach of Contract

In its cross-appeal, Cowles Ford raises three grounds to contest the district court's grant of judgment as a matter of law on the breach of contract claim. Cowles Ford argues: (1) there was no breach because Cowles Ford offered to perform by replacing the Expedition; (2) performance was impossible due to mutual mistake; and (3) Cowles Ford presented a valid defense to damages based on the negative equity value in Nelson's trade in vehicle. We reject each of these arguments in turn.

Cowles Ford first, without legal citation, claims that its various offers to replace the Expedition with a suitable vehicle establish that there was no breach of contract. Cowles Ford, however, did not offer to simply exchange the vehicle for a new Expedition, but instead offered: (1) to provide a replacement vehicle if Nelson paid an undisclosed additional sum; or (2) to pay Nelson $3000-$4000 in damages. These offers may have been offers to cure the improper tender, but because they differed in material ways from the original sales contract, they did not constitute a conforming tender, and thus, Nelson

---

[4]Va. Code Ann. § 59.1-207 (Michie 2001) (restitution and attorney's fees are available for unintentional violations); Va. Code Ann. § 59.1-204 (Michie 2001) (actual damages and attorney's fees for non-willful violation).

had no duty to accept them. Accordingly, we reject Cowles Ford's first defense.

Cowles Ford's second defense, impossibility due to mutual mistake, is also unavailing. Whether Cowles Ford intended to raise the distinct defense of mutual mistake is unclear, but in any event unimportant, because neither defense is applicable here. Mutual mistake only allows the *injured party* to void the contract. *See generally* II *Farnsworth on Contracts* § 9.3 (2d ed. 1998). Nelson is clearly the injured party because he paid for a vehicle with a market value much higher than he received. Impossibility under Virginia law exists only upon the occurrence of an event, the non-occurrence of which was the basic assumption upon which the contract was made. *Opera Co. of Boston v. Wolf Trap Found. for the Performing Arts*, 817 F.2d 1094, 1099-1100 (4th Cir. 1987) (discussing the law of impossibility in Virginia). Cowles Ford can identify no intervening occurrence in the case at bar.

Cowles Ford's third contention fares no better. Cowles Ford argues, in essence, that Nelson had negative equity in his trade-in, and that this amount was rolled into the contract price. Thus, Cowles Ford contends, the district court erred in calculating the amount of damages Nelson suffered. The district court disallowed this defense because the written contract between the two parties had an integration clause forbidding oral modifications. Accordingly, the district court measured damages by subtracting the fair market value of the Expedition at the time of sale from the contract price. We find no error in the district court's analysis. *Cf. United Virginia Bank of Fairfax v. Dick Herriman Ford, Inc.*, 210 S.E.2d 158, 161 (Va. 1974).

### Attorney's Fees

We review the district court's award of attorney's fees for abuse of discretion. *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978). Although Nelson's right to attorney's fees originates from his contract with Cowles Ford, and not a federal statute, the parties agree that the Supreme Court's fee-calculation analysis for awards pursuant to federal statutes should be used to determine the appropriate fee award. *Hensley v. Eckerhart*, 461 U.S. 424 (1983). Neither party disputes that the district court correctly calculated the lodestar amount

to be $31,894.15. Nelson does challenge the court's decision to lower the lodestar figure by two-thirds to account for Nelson's lack of success. Although the district court has broad discretion in awarding attorney's fees, it must "clearly explain its reasons" for choosing a figure. *Craig v. Health & Human Servs.*, 864 F.2d 324, 328 (4th Cir. 1989), *abrogated on other grounds by Gisbrecht v. Barnhart*, 535 U.S. 789 (2002).

Here, the district court justified the reduction on two grounds: (1) Nelson prevailed on only one of the seven counts in his complaint; and (2) Nelson received damages equal to the amount of a pretrial settlement offer by Cowles Ford. The Supreme Court has held that "[t]he most critical factor" in determining an appropriate fee award "is the degree of success obtained." *Hensley*, 461 U.S. at 436. "If . . . a plaintiff has achieved only partial or limited success," a reduction may be appropriate. *Id.* A district court may, in its discretion, consider settlement offers in determining the reasonable amount of attorney's fees. *Thomas v. National Football League Players Ass'n*, 273 F.3d 1124, 1130 n.9 (D.C. Cir. 2001) ("The district court has discretion to consider settlement negotiations in determining the reasonableness of the fees but is not required to do so."); *see also Sands v. Runyon*, 28 F.3d 1323, 1334 (2d Cir. 1994) (comparing the settlement offer and actual award "is a factor a court may use in considering the attorney's fee award"). Nelson admits that Cowles Ford offered to substitute a substantially similar Expedition to the one he believed he had purchased. Given this settlement offer, the district court did not abuse its discretion in finding that Nelson's degree of success was limited and, accordingly, reducing the fee award.

## III

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*