## Cherise ROACH, Plaintiff,

v.

## MIDDLETON AUTO SALES, INC., Cuna Mutual Insurance Company, Inc., Assets Recovered, LLC, and Wachovia Corporation, Defendants.

### Civil Action No. 08–11424–WGY.

United States District Court,
D. Massachusetts.

June 8, 2009.

Tracy M. Conlon, Law Office of Tracy M. Conlon, P.C., Beverly, MA, Sergei Lemberg, Lemberg & Associates, Stamford, CT, for Plaintiff.

Edward C. Cooley, Giarusso, Norton, Cooley & McGlone, James F. Norton, Paven & Norton Quincy, MA, Michael Lushan, Lushan, McCarthy & Goonan, Brookline, MA, Bernard D. Posner, City of Boston Law Department, Boston, MA, for Defendants.

*MEMORANDUM AND ORDER*

YOUNG, District Judge.

## I. INTRODUCTION

On August 18, 2008, Cherise Roach ("Roach") brought this action under the Federal Odometer Act, 49 U.S.C. § 32701, et seq., (the "Act") against Middleton Auto Sales, Inc. ("Middleton Auto"), CUNA Mutual Insurance Company, Inc. ("CUNA"), Assets Recovered, LLC ("Assets"), and Wachovia Corporation ("Wachovia").[1] *See*

---

1. Roach further alleged that all of the defendants violated the Massachusetts Odometer Act, *see* Mass. Gen. Laws c. 266, § 141, and Massachusetts General Laws chapter 93A, and breached the warranty of title.

Roach brought the following additional claims solely against Middleton Auto: violation of the Magnuson–Moss Federal Act, 15 U.S.C. § 2301, et seq.; breach of written, implied and express warranties.

Complaint [Doc. No. 1]. The strange thing about this case is that the actual odometer reading of the subject vehicle is 37,537 miles less than the mileage erroneously represented.

Roach moved for summary judgment on the Federal Odometer Act count, claiming that Assets, acting as agent for CUNA, "made false certifications, with actual knowledge or reckless disregard, as to the truck's mileage." Roach's memorandum of law ("Roach Mem.") [Doc. No. 31] at 1. Assets and CUNA opposed her motion, and moved for summary judgment in their favor on all counts.[2] [Doc. No. 33]. Their motion was denied from the bench at a hearing on April 15, 2009. The Court now reconsiders that ruling and addresses Roach's motion.

## II. FEDERAL JURISDICTION

This Court has jurisdiction pursuant to the Act, which provides that individuals may bring a private cause of action to "enforce a claim under this section in an appropriate United States district court." 49 U.S.C. § 32710(b).[3]

## III. UNDISPUTED FACTS

Prior to 2005, the vehicle at issue, a 2003 Dodge Ram 2500 truck, VIN number 3D7KU28D33G809904 (the "truck"), was owned by Kirk Tashereaux and financed by St. Mary's Bank. The truck disappeared in 2005 and Tashereaux stopped making payments on it. On March 29, 2005, St. Mary's Bank assigned its interest in the truck to CUMIS Insurance Society, Inc. ("CUMIS"), a CUNA subsidiary. *See* Defs.' Statement of Facts ("Defs.' Facts") [Doc. No. 34] at 1(I)(A). CUMIS then hired Assets (a Texas repossessor) to recover and title the truck. *Id.* at 2(1). CUMIS provided Assets with a Power of Attorney to act on its behalf. [Doc. No. 29, Attach. 7].

Assets found the truck at Stanley's Service lot ("Stanley's") in Jamaica Plain, Massachusetts in September 2005. Defs.' Facts at 2(2). It then contracted with a New Hampshire vehicle recovery service, Atlantic Recovery ("Atlantic"), to recover the truck. *Id.* After repossessing the truck, Atlantic forwarded to Assets a copy of a receipt created by Stanley's that indicated that the truck had 66,782 miles on its odometer. Atlantic did not actually cut a new key to unlock the truck and look at the odometer. *Id.* at 2(3).

Later, on September 23, 2005, Assets contracted with Auto Auction of New England ("AANE"), a New Hampshire company, to pick up the truck at Atlantic's lot. *Id.* at 2(4). The truck was in AANE's possession by October 6, 2005. *Id.* at 2(6).

*First Certification*

On October 5, 2005, Assets filed an application for a new Texas title for the truck, certifying that the odometer's mileage was 66,782. Defs.' Facts at 2(5). It did so even though it, in its words, had "no

With respect to "Wachovia Corporation," actually named Wachovia Dealer Services, Inc., [Doc. No. 9], Roach alleged it was liable as the assignee of the vehicle financing agreement.

2. Middleton Auto has not answered the complaint. According to CUNA and Assets, it has gone out of business. Opposition [Doc. No. 32] at 2.

Wachovia has answered the complaint, cross-claimed against the other defendants for indemnification, and counterclaimed against Roach for breach of the financing agreement. Wachovia Answer [Doc. No. 9]. Roach has denied the allegation against her. Roach Answer [Doc. No. 14]. Neither party has moved for summary judgment on the claims between them.

3. The action must be brought no later than two years after the claim accrues. *See* 49 U.S.C. § 32710(b).

way to confirm the actual mileage of the vehicle." [Doc. No. 29, Attach. 16]. Instead, it relied on the receipt from Stanley's.[4] At the time Assets submitted the original application, it believed it knew the correct mileage. Defs.' Facts at 1(IV)(A).

On or about October 6, 2005, AANE transported the truck to an auction facility, where it cut a key, entered the truck, and observed that the odometer on the truck registered 31,245 miles, not 66,782. Defs.' Facts at 2(6).

*Second Amended Certification*

In May 2006, Assets became aware that the truck's odometer actually indicated a mileage of 31,245. Defs.' Facts at 2(9). About four months later, in September 2006, Assets (acting as agent for CUNA) filed a second application for a Texas title and signed a second Odometer Disclosure Statement, certifying that the "actual mileage" of the truck was 31,245 miles. Defs.' Facts at 2(10). Based on this application, the Texas Department of Transportation issued a new title for the truck with the correct mileage. *Id.* at 2(11).

Three weeks after these changes, Assets, via its agent AANE, sold the truck to a Massachusetts-based wholesaler, Fedele Auto Sales ("Fedele"). Defs.' Facts at 2(12).

*Sale to Roach*

Fedele sold the truck to Middleton Auto, which sold it to Roach. Defs.' Facts at 2(13–14). After purchase, Roach discovered many problems (rotted tires, rust on all metal parts, extensive body work, leaking radiator hose, odometer reading inconsistent with truck's tire, brake, and belt wear,[5] to name a few) and concluded that the truck was a "lemon." Roach Mem. [Doc. No. 31] at 6.

## IV. ANALYSIS

### A. The Summary Judgment Standard

This Court must take all inferences in favor of the nonmoving party, which, with respect to Assets' and CUNA's motion, is Roach. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(explaining that on summary judgment motions, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor"). Whether Assets and CUNA intended to misrepresent the odometer reading or acted in reckless disregard of that reading is the main issue here. This Court must be mindful, however, that summary judgment is "rarely appropriate on the issue of intent". *See Bedsworth v. G & J Automotive, Inc.,* 650 F.Supp. 763, 765 (E.D.Mo.1986) (citing *Poller v. Columbia Broadcasting Sys., Inc.,* 368 U.S. 464, 472–73, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962)). Yet if the record indicates that "no showing of the requisite intent can be made," summary judgment may be appropriate. *See Bedsworth,* 650 F.Supp. at 765 (quoting *Pepp v. Superior Pontiac GMC, Inc.,* 412 F.Supp. 1053, 1056 (E.D.La.1976)).[6]

### B. The Federal Odometer Act

The Act provides, in relevant part:

---

4. As repossessor, Assets did not have a key to the truck, so there was no way to confirm actual mileage. Instead, Stanley's figure was used with the assumption that it had accurately read the mileage when it towed the truck.

5. This suggests that someone may have tampered with the truck's odometer during the time it went missing and before it turned up at Stanley's.

6. *Pepp* was a non-jury trial, which distinguishes it from this case, where a jury has been requested. *See Pepp,* 412 F.Supp. at 1056.

(a)Findings. Congress finds that—

(1) buyers of motor vehicles rely heavily on the odometer reading as an index of the condition and value of a vehicle;

(2) buyers are entitled to rely on the odometer reading as an accurate indication of the mileage of the vehicle;

(3) an accurate indication of the mileage assists a buyer in deciding on the safety and reliability of the vehicle; and

. . . .

(b) Purposes. The purposes of this chapter are—

(1) to prohibit tampering with motor vehicle odometers; and

(2) to provide safeguards to protect purchasers in the sale of motor vehicles with altered or reset odometers.

49 U.S.C. § 32701. It requires a person transferring ownership of a vehicle to disclose the actual mileage registered on the odometer, or to disclose the fact the actual mileage is unknown, and prohibits false statements in connection with such disclosure to a transferee. *Id.* at sections 32703, 32704. The Act is "remedial in nature, and should be broadly construed to effectuate its [congressional] purpose." *See Ryan v. Edwards,* 592 F.2d 756, 760 (4th Cir.1979).[7]

### 1. Transferors Under the Act

■ Assets and CUNA can only be held liable under the Act if they acted as a transferor. *See* 49 U.S.C. § 32705(a). Pursuant to the Act, a transferor is a person or entity that transfers its ownership in motor vehicle "by sale, gift, or any means other than by creation of a security interest." *Tusa v. Omaha Auto. Auction, Inc.,* 712 F.2d 1248, 1251 (8th Cir.1983). Congress did not intend, however, that sales agents be included within the sweep of the Act. *See Coulbourne v. Rollins Auto Leasing Corp.,* 392 F.Supp. 1198, 1201 (D.Del.1975). For example, a sole proprietor of an auto dealership would be considered a transferor, whereas a manager would not. *See Bryant v. Thomas,* 461 F.Supp. 613, 618 (D.Neb.1978).

Both parties agree that because St. Mary's Bank assigned its interest to CUNA, CUNA has a security interest in the vehicle. *See In re Circus Time, Inc.,* 641 F.2d 39, 41 (1st Cir.1981). They agree that Assets acted as the agent of CUNA and that CUNA sold the truck to Fedele.[8] Defs.' Facts at 1(III)(A), (B). Assets and CUNA deny, however, that they were transferors with respect to the sale of the truck from Middleton Auto to Roach. Defs.' Facts at 1(III).

Because Assets acted as the agent of CUNA, it is shielded from liability, as it is not considered a transferor. The actions of Assets would be imputed to CUNA.

In *Tusa,* a defendant automobile auction that sold a car to a dealer argued that it was not a transferor or transferee under the Act because it was never the owner of the car and was simply acting as an agent when it put itself in the chain of title. *See Tusa,* 712 F.2d at 1251. The court rejected the argument, concluding that the defendant was an owner for purposes of the Act because its "brief retention of title of the car" made it a transferor and transferee. *See Tusa,* 712 F.2d at 1252.

---

**7.** The statute at issue in *Ryan* and other cases discussed in this opinion, 15 U.S.C. § 1989, has been repealed and replaced by 49 U.S.C. § 32701. The standard for imposing liability remains the same.

**8.** Fedele was the transferor to Middleton Auto; Middleton Auto was the transferor to Roach.

■ Similar to the defendant in *Tusa*, CUNA is a transferor under the Act, even though it received only a security interest (the lien) from St. Mary's Bank. After it had appointed Assets and conferred its power of attorney, Assets (acting as agent) submitted an application for a new title. Assets subsequently submitted another application to change the first title, and was given the corrected title. At this point, CUNA sold the truck to Fedele. Like the defendant in *Tusa*, CUNA, through Assets, was briefly the titleholder of the car. Therefore CUNA was a transferor.

### 2. Intent Under the Act

■ A transferor who does not have actual knowledge can still be found to have "intended to defraud and thus may be civilly liable for a failure to disclose that a vehicle's actual mileage is unknown". *Nieto v. Pence*, 578 F.2d 640, 642 (5th Cir. 1978). Roach does not need to prove that Assets and CUNA acted willfully or with specific intent. *See Universal Underwriters Ins. v. Bob Brest Buick, Inc.*, No. 91–12460–WF, 1992 WL 129602, at *5 (D.Mass. Apr. 24, 1992) (Collings, M.J.); *see also Haynes v. Manning*, 917 F.2d 450 (10th Cir.1990). Instead, Roach need only prove that they acted with "reckless disregard or gross negligence." *Universal*, 1992 WL 129602, at *5. "Simple negligence" is not sufficient; in order to be held liable, a transferor must have acted "with reckless disregard." *See Suiter v. Mitchell Motor Coach Sales, Inc.*, 151 F.3d 1275, 1284 (10th Cir.1998)(citing *Diersen v. Chicago Car Exch.*, 110 F.3d 481, 488 (7th Cir.1997)).

■ Assets and CUNA admit that they did not verify the odometer reading of the truck before submitting the first application for certification of title. Defs.' Facts at 1(VI)(E). That failure, however, does not provide Roach with any relief. Unlike most other odometer tampering cases, here there is no evidence that Roach ever knew, much less relied upon, the original erroneous mileage report. *See, e.g., Haynes*, 917 F.2d at 451–52; *Tusa*, 712 F.2d at 1249–1250; *Ryan*, 592 F.2d at 758–60; *Auto Sport Motors, Inc. v. Bruno Auto Dealers, Inc.*, 721 F.Supp. 63, 64 (S.D.N.Y.1989); *Jones v. Fenton Ford, Inc.*, 427 F.Supp. 1328, 1330–33 (D.Conn. 1977). CUNA was transparent about the mileage discrepancy and applied for a title correction before the truck was sold to Fedele. CUNA did not close its eyes to the truth, as it never saw the odometer at Stanley's and corrected the mileage on the title after AANE cut a key to read the odometer. As matter of law, CUNA did not act in reckless disregard of the truth with respect to the first erroneous certification.

Roach next argues that the truck must have had more than 31,245 miles on it when Assets and CUNA transferred it, and that they acted with reckless disregard because they relied on the odometer reading "in the face of other readily ascertainable information from the title and condition of the truck." Roach Mem. at 13. In support of her contention that "[e]ven a minimal visual inspection of the truck ... would have alerted them that the low mileage indicated on the odometer did not match the truck's condition," *id.*, she has submitted an affidavit from a mechanic, William Zaher, whom she hired to inspect the truck. *See* Zaher Affidavit [Doc. No. 29 Attach. 4]. Zaher averred that he inspected the truck on May 7, 2008, when its odometer registered 40,013 miles, and observed, *inter alia*, that several of its parts showed "significant wear," that there was "excessive corrosion" on its metal parts, and that it showed signs of previous body

work.[9] *Id.* ¶¶ 4–8. Zaher concluded that the truck's "odometer readout was entirely inconsistent [with] its condition." *Id.* ¶ 9. Roach argues that Assets and CUNA reasonably should have known that the odometer reading was incorrect, and that they should have employed practices "reasonably designed to uncover incorrect odometer readings." Roach Mem. at 13. *See Nieto v. Pence*, 578 F.2d 640, 642 (5th Cir.1978) ("If a transferor reasonably should have known that a vehicle's odometer reading was incorrect, although he did not know to a certainty the transferee would be defrauded, a court may infer that he understood the risk of such an occurrence"); *see also Tusa*, 712 F.2d at 1254 (concluding that district court reasonably inferred reckless disregard where transferor prepared an odometer disclosure statement simply by looking at the odometer, with no other examination of the vehicle, and where transferor ignored a previous title that clearly had been altered); *Kantorczyk v. New Stanton Auto Auction, Inc.*, 433 F.Supp. 889, 893 (W.D.Pa.1977) (finding reckless disregard where dealer had practice of relying only on current odometer reading without attempting to discover actual mileage).

Assets and CUNA do not address the merits of Roach's contention that inspection of the vehicle would have revealed tampering with the odometer. Rather, they ask this Court to strike Zaher's affidavit, arguing that it fails to comply with Rule 26(a)(2) of the Federal Rules of Civil Procedure. Defs.' Facts at 1(II)(C); *see also* Defs.' Opp'n [Doc. No. 32] at 8–9. They contend that Roach has not made an expert disclosure or provided a written report as required by the rule,[10] and has not demonstrated that Zaher is qualified. *Id.* Assets and CUNA are correct. Zaher's proposed testimony is that of an expert. *See* Fed. R. Evid. 701;[11] *see also United States v. Ganier*, 468 F.3d 920, 925–26 (6th Cir.2006) (concluding that proposed testimony of computer specialist was expert testimony because witness applied "knowledge and familiarity with computers and the particular forensic software well beyond that of the average layperson."). Here Roach never filed any expert disclosures nor has she filed an expert's report and trial is imminent. Assets and CUNA are entitled to rely upon the Federal Rules of Civil Procedure and the Local Rules of this Court. The Zaher affidavit must be stricken.

Absent evidence that Assets and CUNA reasonably should have known that the odometer reading was incorrect, summary judgment against Roach is appropriate.

---

**9.** Roach submitted a work order from Zaher's auto repair shop reflecting these observations. [Doc. 29 Attach. 26].

**10.** The parties agreed that Rule 26 disclosures would be made within fourteen days after the Court approved their joint scheduling order, which occurred on February 9, 2009. *See* Joint Submission [Doc. No. 20] at ¶ 4. Assets made its disclosures on February 23, 2009. [Doc. No. 23]. Roach never made any disclosures.

**11.** Rule 701 of the Federal Rules of Evidence provides, in pertinent part: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are ... (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Subsection (c) was added in 2000 "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." *See* 2000 Amendments to Fed. R. Evid. 701. "By channeling testimony that is actually expert testimony to Rule 702, the amendment also ensures that a party will not evade the expert witness disclosure requirements set forth in Fed.R.Civ.P. 26 and Fed.R.Crim.P. 16 by simply calling an expert witness in the guise of a layperson." *Id.*

*See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (explaining that summary judgment is properly entered against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

### C. Chapter 93A

Roach alleges that CUNA has violated Massachusetts General Laws chapter 93A, section 2(a), which prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." *See* Mass. Gen. Laws ch. 93A, § 2(a). Pursuant to its statutory authority, the Massachusetts Attorney General has promulgated 940 C.M.R. § 3.16(4), which provides that an act or practice violates chapter 93A, section 2 if it: 1) is oppressive or unconscionable, 2) involves a failure to disclose to a buyer a fact that may have influenced the buyer against purchase, 3) violates a state statute, rule, or regulation meant to protect the public's health, safety or welfare, or 4) violates "[f]ederal consumer protection statutes within the purview of M.G.L. c. 93A, § 2." The final subsection fails because Assets and CUNA did not violate the Act. The Court is unpersuaded that any other section applies.

### V. CONCLUSION

For the reasons discussed in this memorandum, Roach's motion for summary judgment is **DENIED.** Upon reconsideration, Asset's and CUNA's motion for summary judgment [Doc. No. 33] is **GRANTED.** Judgment shall enter for Assets and CUNA. Middleton is defaulted. There being no basis for the exercise of federal jurisdiction over Wachovia's counterclaim against Roach, this Court declines the exercise of supplementary jurisdiction and remands that claim to the Massachusetts Superior Court sitting in and for the County of Middlesex.

SO ORDERED.